**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RUSSELL JOSEPH CANESTRARE,

                          Plaintiff,

v.                                                    5:16-CV-0920
                                                      (CFH)
COMM'R OF SOC. SEC.,

                          Defendant.
_____

APPEARANCES:                              OF COUNSEL:

STANLEY LAW OFFICES, LLP                  STEPHANIE VISCELLI, ESQ.
Counsel for Plaintiff
215 Burnet Avenue
Syracuse, New York 13203

U.S. SOCIAL SECURITY ADMIN.               JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

### <u>MEMORANDUM-DECISION AND ORDER</u>

Currently before the Court, in this Social Security action filed by Russell Joseph

Canestrare ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on

the pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 9, 16.)

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is

denied, and Defendant's motion for judgment on the pleadings is granted.  The

Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's

Complaint is dismissed.


## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1952, making him 60 years old at the alleged onset date and

the date last insured.  (T. at 151.)[1]  Plaintiff reported graduating high school and

completing subsequent training and apprenticeship as an electrician.  (*Id.* at 36)

Plaintiff has past work as a journeyman electrician.  (*Id.* at 37).  Generally, Plaintiff

alleges disability due to hypertension, diabetes, degenerative disc disease, cervical disc

bulging with arm and neck pain, chronic back pain, and hyperlipidemia.


### B.    Procedural History

Plaintiff applied for Disability Insurance Benefits on May 23, 2013, alleging

disability beginning April 1, 2007, which he later amended at the hearing to December

30, 2012.  (T. at 34; 151-52).  Plaintiff's application was initially denied on July 11, 2013,

after which he timely requested a hearing before an Administrative Law Judge ("ALJ").

(*Id.* at 65).  Plaintiff appeared at a hearing before ALJ F. Patrick Flanagan on January 8,

2015.  (*Id.*at 30-58).  On February 9, 2015, the ALJ issued a written decision finding

Plaintiff was not disabled under the Social Security Act.  (*Id.* at 18-25.)  On May 24,

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers set forth therein will be used rather than the page numbers assigned by the Court's electronic filing system.

2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1-3.)

### C.    ALJ's Decision

Applying the five-step sequential evaluation, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012 and had not engaged in substantial gainful activity from the amended alleged onset date of December 30, 2012 until the date last insured.  (T. at 20) At step two of the sequential evaluation, the ALJ found that Plaintiff had medically determinable impairments of degenerative disc disease of the cervical spine, diabetes, hyperlipidemia, hypertension, hypercholesterolemia, and obesity.  (*Id.*)  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months through the date last insured, and, therefore, did not have a severe impairment or combination of impairments.  (*Id.* at 21.)  Because Plaintiff did not have a severe impairment, the ALJ concluded that he was not under a disability between the alleged onset date of December 30, 2012 through the date last insured of December 31, 2012.  (*Id.* at 25.)

### D.    Parties' Arguments

Plaintiff argues that the ALJ erred insofar as he failed to find the presence of a severe impairment that existed before the date last insured.  (Dkt. No. 9, at 4-5 [Pl. Mem. of Law].)  Specifically, Plaintiff argues that the ALJ should have determined that

3

his cervical spine impairment was severe.  (*Id.*)  Defendant argues the ALJ's finding of

no severe impairment is supported by substantial evidence, noting that the relevant

period between Plaintiff's alleged onset date and date last insured was only two days,

and that Plaintiff had to prove he was disabled during that period.  (Dkt. No. 16, at 5-10

[Def. Mem. of Law].)  Defendant argues that the ALJ properly determined that the

evidence did not support the existence of a severe impairment before the date last

insured.  (*Id.*)


## II.    LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &

Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's

determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986

(2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a

finding of no disability creates an unacceptable risk that a claimant will be deprived of

the right to have her disability determination made according to the correct legal

principles."); *accord. Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v.

Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that

amounts to "more than a mere scintilla," and has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

4

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62

(2d Cir. 1982).

   "To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If

supported by substantial evidence, the Commissioner's finding must be sustained "even

where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]."

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court

must afford the Commissioner's determination considerable deference, and may not

substitute "its own judgment for that of the [Commissioner], even if it might justifiably

have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health &*

*Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).


### B.    Sequential Evaluation

   "Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months." *Id.* § 423(d)(1)(A). A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. *Id.* § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

6

> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

*Berry*, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80

(2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).  If the inquiry progresses to the fifth step,

the burden shifts to the Commissioner to prove that the plaintiff is able to engage in

gainful employment.  *Id.* at 1180 (citing *Berry*, 675 F.2d at 467).

Next, an ALJ is to assess the degree of functional limitation, or the impact the

claimant's mental limitations have on her "ability to function independently,

appropriately, effectively, and on a sustained basis."  *Id.* § 404.1520a(c). The ALJ must

assess the plaintiff's degree of functional limitation in four functional areas:

(1) "[a]ctivities of daily living," (2) "social functioning," (3) "concentration, persistence,

and pace," and (4) "episodes of decompensation."  *Id.* §§ 404.1520a(c)(3),

416.920a(c)(3).  The ALJ must "rate" the functional degree of limitation in each of these

four areas as "[n]one, mild, moderate, marked [or] extreme."  *Id.* §§ 404.1520a(c)(4),

416.920a(c)(4).  If the ALJ finds the degree of limitation in each of the first three areas

to be "mild" or better and identifies no episodes of decompensation, the ALJ "will

generally conclude" that the plaintiff's impairment is "not severe."  *Id.* § 404.1520a(d)(1).

Where the plaintiff's mental impairment is "severe," the ALJ must "determine if it meets

or is equivalent in severity to a listed mental disorder."  *Id.* § 404.1520a(d)(2). "If yes,

then the [plaintiff] is 'disabled.'"  *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011)

(summary order) (quoting 20 C.F.R. § 404.1520a(d)(2)).  "In addition, an ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

7

determine whether substantial evidence supports the decision." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado*, 805 F. Supp. at 153.  The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente*, 733 F.2d at 1041.

### III.   ANALYSIS

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities.  20 C.F.R. § 404.1520(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(1)-(5)).  "Although the Second Circuit has held

that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  *Taylor*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, No. 7:05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

Plaintiff argues that, because he was "forced into early retirement due to the cervical spine impairment [] which clearly indicates this impairment significantly limited the claimant's physical ability to do work activities," his impairment must be found severe.  (Dkt. No. 9, at 4-5 [Pl. Mem. of Law].)  However, even if Plaintiff's cervical spine impairment were his reason for retiring in 2007, this is not sufficient evidence to question the ALJ's severity findings.[2]  There is little to no medical evidence to support the extent of restrictions imposed on Plaintiff's functioning as a result of this impairment during or around the relevant time period.  The only medical evidence that Plaintiff provides is an MRI of the cervical spine from March 2006, over six years prior to the alleged onset date.  (T. at 239-40; Dkt. No. 9, at 5 [Pl. Mem. of Law].)  Although this MRI may show that Plaintiff had a medically-determinable cervical spine impairment both in 2006 and in 2012, it does not necessitate a finding that that impairment imposed more than minimal functional restrictions in 2012.

---

[2]  It is noted that plaintiff testified that he chose to retire when he did at least in part, because his union "dropped the retirement age" from 58 to 55.  T at 38.  When the ALJ asked plaintiff why he did not file for social security until 2013, he indicated "[i]f push comes to shove, I go to work until I get hurt again."  T at 40.

A significant flaw in Plaintiff's argument is the total lack of treatment for his cervical spine impairment between August 2010, the date of his last documented chiropractic session with Christopher Piering, D.C., and February 2013, when he began to seek treatment for a re-exacerbation of cervical spine symptoms stemming from an injury sustained while lifting a heavy object. Although Defendant appears to argue that evidence from outside of the time period in question is irrelevant, this assertion is not entirely accurate. *See Newbury v. Astrue,* 321 F. App'x. 16, 18 n.2 (2d Cir. 2009) (summary order) (indicating that "medical evidence generated after an ALJ's decision cannot [be] deemed irrelevant solely because of timing[,]" and noting that "subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'") (alteration in original) (citing *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004)). In some circumstances, evidence predating the alleged onset date can also be probative when assessing whether a severe impairment or limitation existed within the relevant period. *See generally Binder v. Comm'r of Soc. Sec.*, 15-CV-738 (NAM), 2016 WL 4079533, at *4 (N.D.N.Y. July 29, 2016) (noting that, although "[i]t is true that courts have found opinions provided before the onset date to be irrelevant in certain situations . . . this Court does not conclude that *every* opinion provided before an alleged onset date is irrelevant . . . .") (citing *Mills v. Astrue*, 11-CV-955 (GLS), 2012 WL 6681685, at *2 (N.D.N.Y. Dec. 21, 2012). This is particularly true where evidence before or after the relevant period shows findings indicative of an ongoing or chronic impairment that does not improve or fluctuate. *Mills*, 2012 WL 6681685, at *2 ("Notably, medical records which predate the claimant's alleged onset date can 'prove relevant to a claimant's later

condition provided that there is indication that the symptoms experienced extended in duration into the relevant time period.'") (internal citation and quotation marks omitted) From such evidence, an adjudicator may be able to infer that an individual's symptoms and limitations were similar during the relevant period. *Id.*

Here, however, the lack of any treatment relating to Plaintiff's cervical spine impairment between August 2010 and the date last insured prevents any inference that Plaintiff was experiencing similar cervical spine-related symptoms as those noted by Dr. Piering in 2007 and on the one examination in 2010.   Plaintiff suggests that he did not seek chiropractic treatment after those dates because the chiropractic treatment he had sought previously "was used to help the claimant maintain an ability to work (the care was palliative)," and that once he retired, he no longer needed such care to help him maintain the ability to work and instead performed home exercises.  Dkt. No. 9 at 5. However, even if plaintiff felt he no longer needed chiropractic care after his retirement because he did not need such "maintenance" when he was not working, this reasoning does not explain why he did not seek *any* kind of treatment during that time period if his pain was at the severity level he alleged.  Further, plaintiff made such a statement during the hearing, and whether the ALJ chose to find credible plaintiff's argument that he did not seek treatment until 2013 because he did not need such palliative care if he was not working was within the ALJ's purview.  T at 43-44, 50, 52; *see* 20 C.F.R. §§ 404.1529, 416.929 (describing factors relevant to credibility determination).  Indeed, "[t]he Commissioner is not obligated to accept without question a claimant's testimony about [his or] her limitations and symptoms, but has discretion to evaluate the claimant's credibility in light of the evidence in the record."  *Suttles v. Colvin*, 654 F. App'x 44, 46

(2d Cir. 2016) (summary order) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (additional citation omitted)).

There is simply no documentation showing that Plaintiff's symptoms continued at a similar level near to or during the relevant period. Most notably, plaintiff's only treatment from 2012 was two visits to primary care physician John Alley, M.D., and these treatment records do not contain any evidence that plaintiff sought treatment for cervical spine symptoms. (T. 386-95.) Rather, the records suggest an absence of such symptoms. On August 29, 2012, Dr. Alley observed that Plaintiff's neck was normal to inspection and normal to palpation, and on September 28, 2012, he observed Plaintiff's neck was again normal to palpation. (*Id.* at 387, 392.)[3] These two treatment notes – plaintiff's only medical treatment in 2012 – do not support a finding that Plaintiff's cervical spine impairment continued to be symptomatic enough to impose any more than minimal restrictions on his functioning during the relevant period. Further, this evidence also fails to establish that any of the other medically-determinable impairments identified by the ALJ qualified as severe during the relevant time period.

Additionally, although the evidence from February 2013 onward may substantiate the presence of a severe cervical spine impairment, it is difficult to assess whether Plaintiff's functioning and symptoms were of a similar level *prior to* February 2013 due to both his lack of treatment prior to February 2013 and the intervening injury that occurred in February 2013. Based on the absence of evidence from 2011 and 2012

---

[3] Plaintiff contends that "the ALJ flat out lies in the Decision when he states that in 2012 the claimant's primary care physician's examinations of the neck revealed normal range ROM." Dkt. No. 9 at 5 (citing T. at 26-27). However, the Court agrees with the Commissioner that the ALJ did not make such a finding, but instead contended that plaintiff's physician found his neck to be "within normal limits." Dkt. No. 16 (citing T. at 22). Plaintiff's physician did, in fact, make such indications in his records; thus, the ALJ's statement of such record is not misleading or otherwise inaccurate. T. at 387, 392.

suggesting otherwise and the documented exacerbation that occurred in February 2013, there was nothing unreasonable in the ALJ's decision to decline to infer that Plaintiff's neck condition was as symptomatic at the end of 2012 as it became in February 2013. Therefore, because the ALJ's interpretation of the evidence was reasonable, this Court may not substitute its own interpretation or conclusions. *See Hart v. Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld."); *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 266 (N.D.N.Y. 2009) ("If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'") (quoting *Rosado*, 805 F. Supp. at 153).

As to Plaintiff's failure to seek treatment in 2011 and 2012, this Court has noted that a lack of treatment "does not, without more, establish that the impairment was non-severe." *Hamilton v. Colvin*, 8 F. Supp. 3d 232, 240 (N.D.N.Y. 2013). The Court has observed that, when relying on a lack of treatment to discount a claimant's allegations about the severity of their impairment, the ALJ is "obliged to consider whether the lack of treatment during that time period had another cause." *Id.* In this case, the record, including Plaintiff's own testimony, shows that the lack of treatment did not have a different cause. The ALJ noted that Plaintiff testified that "he was doing fine with just

chiropractic maintenance until February of 2013." (T. 22-23.) At the hearing, he testified that he was on a maintenance program with chiropractic care and he had a length of time after he stopped working where he was "doing pretty good because I wasn't doing that overhead work [and] lifting" from his previous job as an electrician. (*Id.* at 41-42.) As previously discussed, he also testified that, after he stopped working in 2007, he "didn't have to go to the chiropractor" because he was "fine" while maintaining himself with home exercise and use of a traction and TENs unit, and it was only in 2013 that things began to worsen again. (*Id.* at 44.) Further, a treatment note from February 21, 2013 noted that Plaintiff reported discontinuing treatment previously due to feeling better. (*Id.* at 245.) Plaintiff's own testimony and statements suggest that he did not seek treatment in 2011 and 2012 because conservative care by means of self-regulated home treatment modalities controlled his symptoms. This evidence is consistent with the ALJ's reliance on the lack of treatment as an indication that Plaintiff's cervical spine impairment did not impose more than minimal restrictions during the relevant time period.

Lastly, although neither party addressed the weight afforded to the opinion evidence, the opinion evidence does merit brief discussion. The ALJ afforded minimal weight to the October 2014 opinion from Dr. Alley and little weight to the November 2014 opinion from Dr. Piering, noting that neither source had actually treated Plaintiff during the relevant period. (T. 24.) This rationale is consistent with the record, which shows that Dr. Piering last treated Plaintiff in August 2010, and that Dr. Alley did not treat Plaintiff between September 2012 and May 2013. Consequently, as the ALJ noted, neither of these sources would have a particular insight into Plaintiff's functioning

during the relevant period, especially because Dr. Alley's treatment notes from a few months prior to that period show no evidence of limitations related to Plaintiff's cervical spine.  (*Id.* at 387, 392.)  As the ALJ properly declined to rely on these opinions due to the circumstances of the treating relationships and inconsistency with the evidence in the record, these opinions do not provide substantial evidence to support the existence of a severe impairment within the relevant period.  *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (noting the factors the ALJ must consider when weighing opinion evidence, including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist") (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

For all the above reasons, the undersigned concludes that the ALJ's step two finding is supported by substantial evidence.  Therefore, remand is not warranted on this basis.


## IV.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

15

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-

Decision and Order on parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated:July 21, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge